**David Michael CLARK, Petitioner–Appellant,**

v.

**James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.**

No. 92–2142.

United States Court of Appeals, Fifth Circuit.

Feb. 27, 1992.

Certiorari Denied Feb. 28, 1992.

See 112 S.Ct. 1254.

Mandy Welch, Anthony S. Haughton, Texas Resource Center, Houston, Tex., for petitioner-appellant.

Dan Morales, Atty. Gen., Robert S. Walt, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

David Michael Clark is scheduled to be executed by the State of Texas at 12:01 a.m. on February 28, 1992. For the second time this year, Clark is asking this court for a stay of execution and a certificate of probable cause to appeal from the district court's denial of his second petition for a writ of habeas corpus. We deny both, for the reasons set forth below.

I

Clark was indicted for capital murder for the murders of Beverly Benninghoff and Charles Gears on February 18, 1987. Clark initially entered a plea of not guilty; however, on June 24, 1987, the third day of trial, midway through the presentation of the prosecution's case-in-chief, Clark changed his plea to guilty. He was convicted on June 25 and sentenced to death on June 26, 1987. He filed a motion for new trial on July 17, 1987, which was denied on August 25, 1987. On March 6, 1991, the Texas Court of Criminal Appeals affirmed his conviction on direct appeal. On April 22, 1991, Clark filed a motion for rehearing with the Texas Court of Criminal Appeals, which was subsequently denied. On August 13, 1991, he filed a petition for writ of certiorari to the United States Supreme Court.

On October 4, 1991, while the petition for writ of certiorari was pending, the state trial court held a hearing to set an execution date. At that time, an attorney from the Texas Resource Center informed the trial judge that Clark did not have counsel to represent him in seeking post-conviction relief, and requested that the execution date be set no earlier than 90 days from the date of the hearing, "to give us an adequate amount of time to obtain counsel and for counsel to prepare and present Mr. Clark's case to this court." Statement of Facts, Hearing to Set Execution Date, p. 5 (Dist. Ct. of Brazos County, TX, 272nd Judicial Dist., Oct. 4, 1991). The trial court obliged that request, and scheduled the execution for January 17, 1992, 103 days after the hearing.

On November 18, 1991, the Supreme Court denied Clark's petition for a writ of certiorari. It was not until December 27, 1991, that the Texas Resource Center produced an attorney to represent Clark in post-conviction proceedings. On January 3, 1992, Clark filed a motion to modify the execution date, requesting a 90–day delay to allow his counsel properly to research and brief the issues. A hearing on the motion to modify was held on January 7, 1992. At that hearing, Anthony Haughton, a staff attorney with the Texas Resource Center, stated that "it will take the better part of 30 days in many cases in order to be able to put a state habeas petition together." On January 11, 1992, the state district court notified counsel by telephone that the motion to modify the execution date was denied, and an order to that effect was entered on January 13, 1992.

At 4:00 p.m. on January 15, 1992, Clark filed his first 82–page post-conviction application for writ of habeas corpus in state court, raising eleven claims. He also filed a motion for stay of execution.

The following events took place on January 16 and the early morning hours of January 17, 1992: (1) the state court denied the motion for stay of execution, and the trial court entered findings of fact and conclusions of law, recommending denial of habeas corpus relief; (2) the Texas Court of Criminal Appeals adopted the trial court's findings of fact and conclusions of law, and denied post-conviction relief; (3) Clark filed his first 85–page federal petition for habeas relief, asserting eleven claims, and also filed a motion for stay of execution; (4) the district court entered an order denying the petition for writ of habeas corpus, motion for stay of execution, and certificate of probable cause to appeal; (5) on appeal, this court also denied relief; and (6) Justice Scalia granted a stay of execution during the early morning hours of January 17, and the Supreme Court vacated the stay later that same day.

The state trial court then scheduled Clark's execution for 12:01 a.m. on February 28, 1992.

## II

At approximately 5:00 p.m. on February 25, 1992, Clark filed his second motion for stay of execution and his second, 58–page post-conviction application for writ of habeas corpus in the state court, presenting four claims. Early the next morning, Clark filed a motion to recuse the state trial judge. The judge refused to recuse himself, and the recusal motion was referred to another judge who denied the motion after a three-hour-long hearing on February 26.

This afternoon, Clark filed a supplemental application for writ of habeas corpus and stay of execution in the Texas Court of Criminal Appeals, alleging that he was denied due process when the trial judge refused to recuse himself. The state trial court entered findings of fact and conclusions of law and recommended that relief be denied. The Texas Court of Criminal Appeals adopted the trial court's findings of fact and conclusions of law and denied Clark's requests for habeas relief and a for a stay. Clark then filed his second federal petition for habeas relief, along with a motion for stay of execution and request for an evidentiary hearing. The district court denied the relief requested and denied Clark's motion for a certificate of probable cause to appeal.

Mere hours before his scheduled execution, Clark is now before this court again, asking for a stay of execution and a certificate of probable cause to appeal, which we deny.

## III

As we stated in our prior opinion in this case, we consider four factors in determining whether to grant a stay of execution:

(1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest.

*Byrne v. Roemer*, 847 F.2d 1130, 1133 (5th Cir.1988) (quoting *Streetman v. Lynaugh*, 835 F.2d 1521, 1524 (5th Cir.1988). Although the movant need not always "show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in the favor of granting the stay." *Buxton v. Collins*, 925 F.2d 816, 819 (5th Cir.1991) (quoting *Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir.), *cert. denied*, 483 U.S. 1036, 108 S.Ct. 6, 97 L.Ed.2d 796 (1987)).

A certificate of probable cause to appeal will be granted if the applicant can make "a substantial showing of the denial of a federal right." *Buxton*, 925 F.2d at 819.

> A "substantial showing" of a denial of a federal right means that "the issues are debatable among jurists of reason, that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" The severity of the penalty in a death penalty case "is a proper consideration in determining whether to issue a certificate of probable cause, but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate."

*Id.* (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 3394 n. 4, 77 L.Ed.2d 1090 (1982)). "[A]ny doubts whether CPC should be issued are to be resolved in favor of the petitioner." *Id.*

Although Clark raised five grounds for relief in his second and supplemental state petitions, in his second federal petition he has abandoned all claims for relief except one. Even with respect to that issue, it is not raised in this proceeding for the first time. Ordinarily *McCleskey v. Zant*, — U.S. —, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) would preclude consideration of the issue; but Clark puts a new twist on it: he contends that his second petition satisfies the exception to the abuse of the writ doctrine, because he has made a colorable showing of factual innocence, i.e., ineligibility for the death penalty. *See Sawyer v. Whitley*, 945 F.2d 812, 816 (5th Cir.1991), *cert. granted*, — U.S. —, 112 S.Ct. 434,

116 L.Ed.2d 453 (1991). Without passing on whether Clark has asserted a genuine exception to *McCleskey*, we will nevertheless address the merits of his claim.

## A

Clark alleges that he was deprived of his sixth amendment right to effective assistance of counsel because his trial counsel unreasonably failed to conduct an investigation of his mental condition at the time of his offense. Clark contends that a reasonable investigation and evaluation of his mental condition at the time he committed the murders would have produced a compelling defense to the first special issue, whether Clark acted deliberately, and would have precluded imposition of the death penalty. This claim was raised in Clark's first federal habeas petition, and resolved against him. He now re-asserts the claim, supplementing it with the results of a psychological evaluation of Clark conducted five years after the murders, and an affidavit of Dr. Robert Geffner, which relies heavily upon hearsay information supplied by Clark's attorneys.

■ To succeed on this claim, Clark must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "[C]ounsel is strongly presumed to

have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. at 2066.

■ The state trial court found that Dr. Geffner's affidavit lacked credibility for three reasons: (1) the evaluation, which makes conclusions as to Clark's conduct in 1987, was conducted five years later, in 1992; (2) Dr. Geffner did not review the court records or a transcript of the trial testimony; and (3) Dr. Geffner relied upon records from Clark's childhood in Pennsylvania, with no records since 1976, and upon hearsay information supplied by Clark's attorneys, with no independent verification of the information, and interviews with Clark. The state court further found that, even if credible, Dr. Geffner's affidavit does not support a conclusion that Clark was either incompetent or insane at the time of the murders, or that he did not act deliberately within the meaning of the first special issue. The state court noted that Clark testified that he had not taken any drugs on the day of the murders, and found that Clark's trial counsel had no indication that Clark was suffering from drug withdrawal at the time of the murders. Moreover, the state court pointed out that, in any event, evidence that Clark was acting under a drug-induced delusion when he committed the murders would have been immaterial to an insanity defense and "would not have conflicted with the overwhelming evidence of deliberateness."

The trial judge, who had an opportunity to observe Clark throughout the pre-trial hearings and at trial, found that there was no indication at any time that Clark suffered from any mental disease or disorder that would render him incompetent to stand trial or to enter his guilty plea.

■ The state court findings address every assertion made by Clark in support of his claim, and resolve the issues adversely to him. We are bound to respect the state court's findings and accord them a presumption of correctness under 28 U.S.C. § 2254 and *Sumner v. Mata,* 449 U.S. 539, 549, 551, 101 S.Ct. 764, 770, 771, 66 L.Ed.2d 722 (1981); *see also Carter v. Collins,* 918 F.2d 1198, 1202 (5th Cir.1990) (state court's resolution of an ineffective assistance claim by reference to affidavits is entitled to the presumption of correctness). Indeed, on February 26, 1992, we released an opinion in *May v. Collins,* 955 F.2d 299 (5th Cir. 1992), holding that the state court's findings were presumptively correct notwithstanding its decision not to hold an evidentiary hearing to resolve disputed issues of fact. Nothing in the papers before us indicates that Clark's attorneys had any reason to believe that he might have been mentally ill when he committed the pre-meditated double murders; therefore, their failure to conduct an investigation of Clark's mental condition at the time of the murders does not support a finding of any deficiency in their performance. This issue has no merit.

### B

■ Clark contends that he is entitled to an evidentiary hearing because his ineffective assistance of counsel claim was denied on the basis of the trial court findings about the credibility of witnesses based on affidavits. As was the case in *May* and *Buxton v. Lynaugh,* 879 F.2d 140 (5th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990), the state trial judge reviewing the post-conviction affidavits is the same judge who presided over Clark's trial and sentencing. This claim is answered simply and quickly by our opinion in *May.*

### IV

We have thoroughly considered the claims asserted by Clark in his latest round of last-minute submissions, and have also re-examined all of the papers filed by him last month in the hours before his execution was initially scheduled. We conclude that Clark has failed to make a substantial showing of the denial of a federal right, and we therefore deny his application for a certificate of probable cause to appeal. We further conclude that Clark has failed to demonstrate either a substantial case on the merits or that the balance of the equi-

ties weighs in his favor. We therefore deny his motion for a stay of execution.

CERTIFICATE OF PROBABLE CAUSE TO APPEAL DENIED.

MOTION FOR STAY OF EXECUTION DENIED.